| | |
|---|---|
| TULIS WILKES HUFF & GEIGER, LLP<br>Attorneys for Chapter 7 Trustee, Mark S. Tulis<br>220 White Plains Road<br>Tarrytown, New York 10591<br>(914) 747-4400<br>Mark S. Tulis, Esq. | Hearing Date:  May 28, 2020<br>Hearing Time: 10:00 a.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:                                                                          Chapter 7

EDWARD F. MILLER,                                               Case No. 18-22449(RDD)
                                    Debtor.
---------------------------------------------------------X

**MOTION SEEKING ORDER AUTHORIZING AND APPROVING STIPULATION RESOLVING THE CHAPTER 7 TRUSTEE'S CLAIMS AGAINST CERTAIN ESTATE PROPERTY, PURSUANT TO 11 U.S.C. §§ 707, 727 AND BANKRUPTCY RULE 9019**

**TO THE HON. ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE**:

The application of Mark S. Tulis, by his attorneys Tulis Wilkes Huff & Geiger, LLP, respectfully shows and alleges:

1. Edward F. Miller (the "Debtor") is the debtor herein, having filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on March 28, 2018 (the "Filing Date").

2. Mark S. Tulis was appointed Chapter 7 Trustee pursuant to 11 U.S.C. §§701(a) and 702(d).

3. This application is for an order authorizing and approving a settlement resolving the Chapter 7 Trustee's potential causes of action against the Debtor pursuant to §§ 707(b)(2) and 727 of the Bankruptcy Code and Bankruptcy Rule 9019.

4. On April 17, 2018, the Debtor filed his Schedules with the Court, and the Debtor filed Amended Schedules on June 22, 2018; June 27, 2018; and again on July 17, 2018

(collectively the "Schedules").

5. The Debtor's Schedules, as well as the Debtor's sworn testimony at the 341(a) Meeting of Creditors, indicate, *inter alia*, that (i) the Debtor has over $5,000 per month in excess income, (ii) the Debtor pays $7000 per month in rent to his significant other, Giovanna Campo a/k/a Giovanna Battaglia, to pay for their residence at a private house located at 282 Elwood Avenue, Hawthorne, New York (the "Residence"), (iii) the Debtor owns vehicles, including but not limited to a Jaguar XJ, an "Arctic Cat," and a "Polaris quad," (iv) the Debtor has receivables for unpaid wages in the amount of $120,000, and (v) the Debtor is the holder of an "unreimbursed open D2nd note with TMG Energy Systems," valued at $260,000.

6. Based upon the aforementioned assets, the Trustee has reviewed whether to (a) seek a dismissal of the Debtor's Chapter 7 case pursuant to § 707(b)(2) of the Bankruptcy Code, (b) to commence seeking to deny the Debtor's discharge pursuant to § 727 of the Bankruptcy Code, (c) to seek a conversion of the Debtor's Chapter 7 case to one under Chapter 11 of the Bankruptcy Code, or (d) to seek a settlement with the Debtor that would be most cost-effective for the Debtor's estate.

7. After extensive consideration of the aforementioned option, and upon negotiations with the Debtor, the Trustee has determined that it would be in the best interests of the Debtor's estate if the Chapter 7 Trustee were to avoid the need for motion practice and litigation and to settle the matter upon the terms and conditions set forth below.

## THE TERMS OF THE STIPULATION

8. The Trustee, subject to Court approval, the Trustee will not seek the conversion or dismissal of the Debtor's Chapter 7 case, nor will the Trustee seek a denial of the Debtor's

discharge, in exchange for funds in the amount of $200,000. The Debtor has already placed funds in the amount of $10,000 in escrow with the Trustee. The balance of $190,000 shall be due within 10 days of the entry of the proposed Stipulation and Order. If the Stipulation is approved by the Court, and the Debtor fails to timely pay the balance due (i) the Stipulation shall be nullified, and the Trustee will keep the $10,000 on behalf of the Debtor's estate and (ii) the Trustee may seek a conversion or dismissal of the Debtor's Chapter 7 case or may seek to deny the Debtor's discharge. If the Stipulation is not approved by the Court, the Trustee shall return the $10,000 to the Debtor and the Trustee shall maintain any rights to seek a conversion or dismissal of the Debtor's Chapter 7 case or to deny the Debtor's discharge. A copy of a letter from Debtor's counsel, Daniel Zinman, dated March 31, 2020, setting forth the terms of the Stipulation, is annexed hereto as Exhibit "A."

9. The Trustee and the Debtor (the "Parties") wish to resolve the aforementioned concerns in a fair manner in light of all the facts and circumstances and in order to avoid the need for costly litigation.

10. The Parties have agreed to entered into a Stipulation (the "Stipulation"), which if approved by this Court, will resolve all issues relating to the Parties' respective interests.

11. The Trustee has investigated the potential claims against the Debtor, and based upon his findings has determined that the terms of the proposed Stipulation are fair and equitable.

12. Absent the Stipulation, the Parties would face the possibility of protracted and costly litigation. It is the Trustee's judgment that further litigation would be costly and result in a resolution no different than the terms of the Stipulation.

## RELIEF SOUGHT PURSUANT TO BANKRUPTCY RULE 9019

13. The Trustee herein requests the entry of an Order pursuant to Bankruptcy Rule 9019 of the Federal Rules of Bankruptcy Procedures approving the Stipulation between the Parties.

14. As discussed below, the compromise meets all the tests for approval and therefore the Stipulation should be approved.

15. Compromises and settlements are a normal part of the bankruptcy process. *See* Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U. S. 414, 424 (1968), *reh'g denied,* 391 U.S. 909 (1968), *citing* Case v. Los Angeles Lumber Prods, Co., 308 U.S. 106, 130 (1939). The structure and provisions of the Code promote negotiation and settlement for the benefit of creditors in accordance with "the policy of the law generally [which is] to encourage settlements." In re Jackson Brewing Co., 624 F. 2d 599 (5th Cir. 1980). Resolution of claims through settlement furthers the goal of bankruptcy administration to liquidate estate assets as rapidly as possible "consistent with obtaining the best possible realization upon the available assets and without undue waste by needless or fruitless litigation." In re Carla Leather, Inc., 44 B.R. 457, 471 (Bankr. S.D.N.Y. 1984), *aff'd,* 50 B.R. 764 (S.D.N.Y. 1985).

15. Bankruptcy Rule 9019(a) permits this Court to approve a compromise or settlement. The Rule provides:

> (a) *Compromise.* On motion by the trustee and after notice and a hearing the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Neither Rule 9019 nor any section of the Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval.   However, the standards for approval of settlements in bankruptcy cases are well established in the case law, focusing upon whether the proposed settlement is reasonable and in the best interests of creditors.   *See* Protective Committee v. Anderson, 390 U.S. 414 (1968), *reh'g denied,* 391 U.S. 909 (1968).

16.    In considering a proposed settlement, the Court is guided by a lenient standard consistent with the theory that "little would be saved by the settlement process if [in order to approve a settlement] bankruptcy courts [were required to conduct]…an exhaustive investigation and determination of the underlying claims." Purofied Down Products, 150 B.R. at 522-23.   The bankruptcy court in Carla Leather explained the underlying the abridged review of settlements in bankruptcy as follows:

> The very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressional infusion of a power to compromise…This could hardly be achieved if the test on hearing for approval meant establishing success or failure to a certainty.

Carla Leather, 44 B.R. at 470; *see also* Purofied Down Products, 150 B.R. at 522-23.

17.    In evaluating the propriety of a settlement in concert with the foregoing factors, the court need not conduct a trial, "mini-trial," or "a rehearsal of the trial" on the merits to actually resolve the extant factual and legal issues, but must simply consider whether against the background of those issues, the settlement is reasonable. Newman v. Stein, 464 F. 2d 689, 692 (2d Cir. 1972), *cert. denied sub nom.*   Benson v. Newman, 409 U.S. 1039 (1972).   *See also* In re International Distribution Centers, Inc., 103 B.R. 420, 423 (S.D.N.Y. 1989); In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991).   In so doing, the

court may consider the settlement in the context of its familiarity with the history of the case, the complexity of the claims alleged, the parties, and the context in which the claims and the settlement arose.  See Anderson, 390 U.S. at 444;  Purofied Down Products, 150 B.R. at 519, 524; International Distribution Centers, 103 B.R. at 423.

18.    The bankruptcy court, apprised of the facts of the controversy and the risks and costs of the litigation, is bestowed with broad discretion to approve settlements that fall within the range of reasonableness.  Purofied Down Products, 150 B. R. at 523-24; In re Texaco, Inc., 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988), *appeal dismissed,* 92 B.R. 38 (S.D.N.Y. 1988).   The proposed settlement need not be ideal, but merely above the lowest point in the range of reasonableness under the circumstances.  See W.T. Grant, 699 F.2d at 613-14; Newman v. Stein, 464 F.2d at 693; Purofied Down Products, 150 B.R. at 523-24 (district court affirmed approval of a settlement that although not ideal, "disclosure statement not fall below the lowest point in the range of reasonableness").   This concept of a "range of reasonableness" recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent to taking any litigation to completion."  Newman v. Stein, 464 F.2d at 693. Thus, a court need not insist upon the best possible settlement, but may approve a settlement as within the range of reasonableness under the circumstances. In deciding whether a proposed compromise is fair and equitable, reasonable and in the best interests of creditors, courts in the Second Circuit follow the analysis first articulated by the Supreme Court in Anderson, as developed and applied by the case law.   Thus, courts assess a proposed settlement based upon a consideration of some or all of the following factors:

(i) the relative benefits to be received by creditors under the proposed settlement;

(ii) the likelihood of success in the litigation compared to the present and future benefits offered by the proposed settlement;

(iii) the prospect of complex and protracted litigation if settlement is not approved;

(iv) the attendant expense, inconvenience and delay of litigation;

(v) the probable difficulties of collecting on any judgment that might be obtained;

(vi) the competency and experience of counsel who support the proposed settlement;

(vii) the extent to which the settlement is the product of arm's-length bargaining, and not the product of fraud or collusion;

(viii) the nature and breadth of any releases to be issued as a result of the proposed settlement; and

(ix) the paramount interest of the creditors and proper deference to their reasonable views.

See City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974); Ionosphere, 156 B.R. at 427; Purofied Down Products, 150 B.R. at 522; International Distribution Centers, 103 B.R. at 422; In re Fugazy, 150 B.R. 103,106 (Bankr. S.D.N.Y. 1993); Drexel, 134 B.R. at 497; In re Drexel Burnham Lambert Group, Inc., 134 B.R. 499, 506 (Bankr. S.D.N.Y. 1991); Crowthers McCall, 120 B.R. at 287, Texaco, 84 B.R. at 901; In re Lion Capital Group, Inc., 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985); Carla Leather, 44 B.R. at 466; In re W.T. Grant Co., 4 B.R. 53,69 (Bankr. S.D.N.Y.). aff'd, 20 Bankr. 186 (S.D.N.Y.), aff'd, 699 F. 2d 599 (2d Cir. 1983), cert. denied sub nom. Cosoff v. Rodman, 464 U.S. 822 (1983). See also In re Jackson Brewing Co., 624 F. 2d 599, 602 (5th Cir. 1980).

19. Absent the Court's approval of the Stipulation, the Parties would face the possibility the possibility of protracted and costly litigation. In light of the foregoing facts and circumstances, the Trustee believes the terms set forth in the Stipulation are fair and reasonable.

20. Therefore, the Trustee respectfully submits that the settlement embodied in the Stipulation falls well above "the lowest point in the range of reasonableness" and is in the best interests of the estate and should therefore be approved.

**WHEREFORE**, the Trustee respectfully requests that this Court authorize and approve the Stipulation between the Parties, together with such other and further relief as is just and proper under the circumstances.

Dated: Tarrytown, New York      TULIS WILKES HUFF & GEIGER, LLP
     April 3, 2020      Attorneys for Chapter 7 Trustee, Mark S. Tulis

                                By:  */s/ Mark S. Tulis*
                                Mark S. Tulis, Esq.
                                220 White Plains Road
                                Tarrytown, New York 10605
                                (914) 747-4400